IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NOEL SOBERS HEWITT                    :

                                          :

    v.                    :   Civil Action No. DKC 20-1322

                                           :

DYCK-O'NEAL, INC.                    :

                                           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action brought under the Fair Debt Collection Act is a motion to enforce settlement filed by Defendant Dyck-O'Neal, Inc. ("DONI"). (ECF No. 32). Plaintiff filed an opposition, and Defendant replied. Also pending are two motions to seal filed by Defendant (ECF Nos. 33 & 37) and cross-motions for summary judgment. (ECF Nos. 25 & 27). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to enforce settlement will be granted, the motions to seal will be denied, and the cross-motions for summary judgment will be denied as moot.

**I.   Motion to Enforce Settlement**

> When the parties to litigation in federal court reach an agreement to settle the case, the district court has "inherent authority, deriving from [its] equity power, to enforce [the] settlement agreement[ ]," and it may do so on a motion to enforce the settlement agreement filed in the underlying litigation. *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540

(4th Cir. 2002); *see Smith v. Montgomery Cty., Md.*, No. PWG-17-3122, 2019 WL 1130156, at *3 (D.Md. Mar. 12, 2019).  A motion to enforce a settlement agreement is tantamount to "an action for specific performance of a contract." *Amaya Diaz v. Pho Eatery, Inc.*, No. DKC-17-2968, 2019 WL 5102696, at *1 (D.Md. Oct. 11, 2019) (quoting *United States ex rel. McDermitt, Inc. v. Centex-Simpson Constr. Co.*, 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999), *aff'd sub nom. United States v. Centex-Simpson Constr.*, 203 F.3d 824 (4th Cir. 2000)).  Thus, "to enforce the settlement agreement, the court must 1) find that the parties reached a complete agreement and 2) must be able to determine that agreement's terms and conditions." *Id.* (citing *Hensley*, 277 F.3d at 540–41).  Under Maryland law, the court applies "the same general rules of construction that apply to other contracts." *Trs. of Iron Workers Local Union No. 5 & Iron Workers Employers Ass'n, Employee Pension Tr. v. Moxy Misc. Metals, LLC*, No. PWG-17-3285, 2019 WL 4536514, at *1 (D.Md. Sept. 19, 2019) (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006)).  Accordingly, there must be offer, acceptance, and mutual consideration for an agreement to exist.  *Id.* (citing *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (elements of contract under Maryland law)). Provided that there is no "substantial factual dispute over either the agreement's existence or its terms," the court does not need to hold an evidentiary hearing.  *Id.* (quoting *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016)); *see also* Loc. R. 105.6.

*Sunbelt Rentals, Inc. v. Verticon Constr., Inc.,* No. DLB-18-3134, 2019 WL 6618661, at *3 (D.Md. Dec. 5, 2019) (footnote omitted).

Defendant's motion to enforce settlement is based on a series of emails exchanged between counsel in June 2021.   Some of the emails are attached to the motion, additional emails are attached to the opposition, and still others to the reply.   Those emails are as follows:

1. June 11, 4:55 pm: offer to settle made by Defendant ($40,000 inclusive of fees and costs, payment by Defendant within 30 days of receipt of an agreed upon executed Settlement and Release with confidentiality and Plaintiff's counsel's firm W9).

2. June 15, 12:03 pm: Plaintiff's response, explaining reason for some tardiness, demanding $57,150, consisting of attorney's fees and statutory damages.

3. June 23, 5:01 pm: inquiry from Plaintiff regarding whether the case can be settled.

4. June 24, 12:18 pm: Defendant's counteroffer of $42,500 inclusive of fees and costs, with the same terms in the initial offer.   In addition, the email stated that if terms were agreed to that day, the release could be provided immediately.

5. June 24, 12:30 pm:  Plaintiff's response stating, "My client's final number is 49150.   There's no room for negotiation lower.   It's all of his provable damages. If we go to trial, or do an 8-hour mediation with a judge, that's going rack up my hourly fees at $250 per hour (Statutory).   Just the mediation will kick it up to $51,150. Trial prep, $5,000 more dollars. By the time we finish a trial it will be above $70,000 in actual damages.

   Please explain that to your client if you think doing so will help resolve. My client agrees to all of the other terms (nonmonetary) of your offer.   Let's just get this done at $49,150."

6.   June 25, 1:12 pm:  Defendant's response stating, "DONI
     will agree to settle this is at $49,150.  I will forward
     the release shortly."

7.   June 25, 3:38 pm: email from Defendant attaching release

8.   June 25, 3:51 pm: email from Plaintiff stating, "My
     apologies, the demand was for $57,150, not $49,150.
     Please refer to the Demand letter sent for the Federal
     Mediation".

9.   June 25, 3:55 pm: email from Plaintiff stating "If you
     send over the release for that signed demand that will
     close out the case."

10.  Emails not provided, but Defendant sent email to
     Plaintiff with a copy of Plaintiff's counterdemand at
     $49,150.

11.  June 25, 4:02 pm: email from Plaintiff responding "It
     was my clerical error.  If you want to seek sanctions,
     I understand.   My client is going to trial if the
     settlement is less than the demand signed letter.  These
     errors occur in emails as you know. That is why the Court
     requires the signed demand letter."

12.  June 28, 5:38 pm: email from Plaintiff stating, "The
     offer of settlement with the erroneous number is hereby
     revoked.  Your client never ascended [sic] to that offer.
     Your words were "DONI will agree", indicating that had
     not yet done so. Words matter.  Had you said "DONI does
     agree" instead of "will", I would be in one heck of a
     predicament. Fortunately for me I am not.  I am thankful
     for your wording and verbiage.  So negotiations are still
     ongoing.   If you file a motion, we will file ours
     countering yours, and the hours that I work will continue
     to rise in quantity thereby costing your client more
     provable damages in the end."

(ECF Nos. 32, 34, 36).

Defendant contends that these emails evidence an agreement to settle for payment of $49,150.00, inclusive of all fees and costs, with confidentiality, payment to be made within 30 days of receipt of a signed release and W9.  Plaintiff's arguments for disregarding the clear import of the emails are insubstantial.  He contends that his email offering to settle at $49,150 contained a "typographical clerical" error in the dollar amount.  Such a unilateral mistake does not undo an agreement.

"As the Maryland Court of Appeals explained in *Creamer v. Helferstay*, 'the law in [Maryland] is clear that, absent intentional culpable conduct, such as fraud, duress, or undue influence[,] a unilateral mistake is ordinarily not ground for relief from a contract.'"  *AMBIMJB, LLC v. Strategic Armory Corps, LLC,* No. CV JKB-20-807, 2021 WL 949376, at *5 (D.Md. Mar. 12, 2021) (citing *Creamer v. Helferstay*, 448 A.2d 332, 339 (Md. 1982)).  "The policy of encouraging settlement is so important that, even when the parties later discover that the settlement may have been based on a [unilateral] mistake, settlement agreements will not be disturbed." *McDaniels v. Westlake Servs., LLC*, No. CIV.A. ELH-11-1837, 2013 WL 2491337, at *9 (D.Md. June 7, 2013) (quoting *Nationwide Mut. Ins. Co. v. Voland*, 103 Md.App. 225, 237, 653 A.2d 484, 491 (1995)).  Here, Plaintiff does not argue that his mistake

was the result of any inequitable conduct by Defendant.  Moreover, there was no way for Defendant to know that the number provided by Plaintiff's counsel was a mistake.  Thus, Plaintiff's unilateral mistake is not grounds for disturbing the settlement agreement reached.

Likewise, there was no "mutual mistake" as that term applies to a contract.  Mutual mistake occurs "'where there has been a meeting of the minds [] and an agreement actually entered into, but the instrument, in its written form, does not express what was intended by the parties thereto.'" *Kishter v. Seven Courts Cmty. Ass'n, Inc*., 96 Md.App. 636, 640 (1993) (quoting *Moyer v. Title Guarantee Co*., 227 Md. 499, 505 (1962)).  Here, there is no evidence of mutual mistake because Defendant clearly seeks to enforce the agreement as written.

Nor does the argument that somehow the Defendant had not accepted Plaintiff's counterdemand make sense.  Not only are the plain words indicative of acceptance, but a proposed release was sent within hours.  The signing of a release was not an added term, but had been included in Defendant's first offer, and was already accepted by Plaintiff while they continued negotiating about a number.  Finally, the agreement to settle was in writing, via emails, even if the statute of frauds required a writing.

In sum, a complete settlement agreement was reached in this case.  The terms and conditions of the agreement, as memorialized by counsels' emails, were clear.  The fact that Plaintiff "[had] second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997).  Accordingly, the court will exercise its inherent authority to enforce the terms of the settlement reached by the parties.  Defendant's motion to enforce settlement will be granted.[1]

## II. Motions to Seal

Also pending are two unopposed motions to seal filed by Defendant.  (ECF Nos. 33 & 37).  A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the [c]ourt record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections.  The [c]ourt will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties.  Materials that are the

---

[1] The court's decision to grant Defendant's motion to enforce settlement moots Plaintiff's motion for summary judgment (ECF No. 25); Defendant's cross-motion for summary judgment (ECF No. 27); and Defendant's motion to strike Plaintiff's answer to Defendant's cross-motion for summary judgment.  (ECF No. 29).

> subject of the motion shall remain temporarily
> sealed pending a ruling by the [c]ourt.   If
> the motion is denied, the party making the
> filing will be given an opportunity to
> withdraw the materials.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir. 1984).   Moreover, the First Amendment provides a more rigorous right of access to judicial documents, *i.e.*, those filed with the court that play a role in the adjudicative process.   *Doe v. Public Citizen*, 749 F.3d 246, 265-67 (4th Cir. 2014).

Defendant requests: (1) that his motion to enforce settlement and attached exhibits, (ECF No. 32), currently filed under seal, remain under seal; (2) that Plaintiff's response and attached exhibits, (ECF No. 34), be placed under seal; and (3) that Defendant's reply and accompanying exhibits, (ECF No. 36), also remain under seal.   In support, Defendant states only that "[t]he negotiations contained in the correspondence between the parties, and the value of the agreed-upon settlement Defendant is now seeking to enforce, are confidential matters that neither party intended to be publicized in any manner."   (ECF No. 37, at 2).

8

"The presence of a confidentiality provision is not itself a sufficient reason to seal a settlement agreement." *Fonseka v. AlfredHouse ElderCare, Inc.*, No. GJH-14-3498, 2015 WL 3457224, at *2 (D.Md. May 28, 2015); *see also Kanu v. Toyota Motor Sales, USA, Inc.*, No. DKC 15-3445, 2016 WL 3669945, at *3 (D.Md. July 11, 2016) ("Aside from the bare fact that defendants and FMH agreed to the confidentiality of the settlement and the obvious interest of almost any party in keeping close the amount it is willing to pay (or receive) to settle a claim, the parties have articulated no basis to seal the settlement agreement.") (quoting *Bureau of Nat'l Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352 at *3 (D.Md. July 25, 2012)). Without any further factual representations presented to justify sealing, Defendant's motions to seal must be denied. Once the parties sought relief from the court, the emails and memoranda became judicial records, subject to public access unless there is a compelling reason for restriction.

Pursuant to Local Rule 105.11, when a motion to seal is denied, the parties are ordinarily given an opportunity to withdraw the materials. It is not practical to do so here, nor are redactions possible, because the entire contents of the email negotiations are necessary to resolving the motion to enforce

settlement and are recited in this Memorandum Opinion, which must be filed on the public record.

<pre>
                          _____/s/_____
                          DEBORAH K. CHASANOW
                          United States District Judge
</pre>